## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

**RACHEL REGAN,**

        **Plaintiff,**

                                        **Case No. 3:18-cv-17436**
        **v.**                          **Magistrate Judge Norah McCann King**

**ANDREW SAUL,**
**Commissioner of Social Security,**

        **Defendant.**

### <u>OPINION AND ORDER</u>

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Rachel Regan[1] for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq*. Plaintiff appeals from the final decision of the Commissioner of Social Security denying Plaintiff's application. After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f). For the reasons that follow, the Court affirms the Commissioner's decision.

## I.    PROCEDURAL HISTORY

On August 28, 2013, Plaintiff filed her application for benefits, alleging that she has been disabled since January 1, 1998. R. 251–56. Plaintiff's application was denied initially and upon reconsideration. R. 127–31, 135–41. Plaintiff sought a *de novo* hearing before an administrative

---

[1] Plaintiff spells her name "Rachel" in the Complaint and reply brief, *see generally Complaint*, ECF No. 2, *Plaintiff's Reply Brief*, ECF No. 38, but spells it "Rachael" in her opening brief. *See generally Amended Plaintiff's Brief*, ECF No. 34.

1

law judge. R. 142−44. Administrative Law Judge Sharon Allard ("ALJ") held a hearing on

November 16, 2016, but adjourned that hearing when Plaintiff's counsel advised that Plaintiff

would appear by telephone despite the fact that the ALJ had denied her request to do so. R. 92–

100.

The ALJ held a second hearing on January 25, 2017, at which Plaintiff's counsel

appeared and again advised that Plaintiff was available to testify by telephone. R.71−91. The

ALJ, however, advised that she had again denied Plaintiff's request to appear by telephone. R.

73. Over Plaintiff's counsel's objection, the ALJ stated, "I'm going to go forward and determine

that your client [Plaintiff] is not a necessary witness in order for us to proceed today." R.  73−74.

A vocational expert also appeared and testified. R. 84−88. At the end of that second hearing, the

ALJ agreed to request additional records. R. 88−90.

On August 23, 2017, the ALJ held a third hearing, at which Plaintiff, who was

represented by counsel, appeared by telephone and testified, as did Plaintiff's mother, Edith

Regan. R. 38−67. A vocational expert appeared but did not testify. *Id*.

In a decision dated September 27, 2017, the ALJ concluded that Plaintiff was not

disabled within the meaning of the Social Security Act since August 28, 2013, the date on which

the application was filed. R. 15 − 28. That decision became the final decision of the

Commissioner of Social Security when the Appeals Council declined review on October 14,

2018. R. 1−6. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On

October 16, 2019, Plaintiff consented to disposition of the matter by a United States Magistrate

Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF

Nos. 22, 23.[2] On June 9, 2020, the case was reassigned to the undersigned. ECF No. 39. The

matter is now ripe for disposition.

## II.   LEGAL STANDARD

### A.   Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the

authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204

F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to

determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d

Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence "does not mean a

large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565

(1988) (citation and internal quotations omitted); *see K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*,

No. 17-2309 , 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).  Substantial evidence is "less

than a preponderance of the evidence, but 'more than a mere scintilla.'" *Bailey v. Comm'r of Soc.

Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *see K.K.*, 2018

WL 1509091, at *4.

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot

be set aside merely because the Court "acting de novo might have reached a different

conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see*, *e.g.*, *Fargnoli

v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported

by substantial evidence, we are bound by those findings, even if we would have decided the

---

[2] The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases
seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot
Project (D.N.J. Apr. 2, 2018).

factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d

501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter*, 650 F.2d at 482.  Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see*

*A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518. In assessing whether the record is fully developed to support an award of benefits, courts take a more liberal approach when the claimant has already faced long processing delays. *See*, *e.g.*, *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000). An award is "especially appropriate when "further administrative proceedings would simply prolong [Plaintiff's] waiting and delay his ultimate receipt of benefits." *Podedworny*, 745 F.2d at 223; *see Schonewolf*, 972 F. Supp. at 290.

### B.      Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 416.920(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 416.920(b).  If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 416.920(c). If the plaintiff does not have a severe

impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 416.920(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at § 416.909. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 416.920(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 416.920(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

## III.   ALJ DECISION AND APPELLATE ISSUES

The Plaintiff was 20 years old on August 23, 2013, *i.e.*, the date on which the application was filed. R. 26.  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since that date. R. 17.

7

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: anxiety disorder, affective disorder, attention deficit disorder ("ADD") / attention deficit hyperactivity disorder ("ADHD"), and agoraphobia. *Id.* The ALJ also found that Plaintiff's diagnosed impairment of headaches was not severe. R. 17–18.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 18–20.

At step four, the ALJ found that Plaintiff had the RFC to perform a full range of work at all exertional levels subject to various non-exertional limitations. R. 20–26.

At step five, the ALJ found that a significant number of jobs–*i.e*., approximately 90,000 jobs as a ticket tagger; approximately 90,000 jobs as a garment folder; approximately 100,000 jobs as a labeler–existed in the national economy and could be performed by an individual with Plaintiff's vocational profile and RFC. R. 27. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act since August 28, 2013, the application date. R. 28.

Plaintiff disagrees with the ALJ's findings at steps three and four and asks that the decision of the Commissioner be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings. *Amended Plaintiff's Brief,* ECF No. 34; *Plaintiff's Reply Brief*, ECF No. 38. The Commissioner takes the position that his decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1,* ECF No. 35.

## IV.    DISCUSSION

### A.    Evaluation of Medical Opinions

Plaintiff first argues that the ALJ erred in assigning great weight to the opinions of two reviewing state agency physicians and "Neglected Opinions of All Treating and Consulting Medical and Other Sources in Evaluating the Severity of the Plaintiff's Mental Impairments[.]" *Amended Plaintiff's Brief*, ECF No. 34, pp. 17–20; *see also Plaintiff's Reply Brief*, ECF No. 38, pp. 5–6. For the reason that follow, Plaintiff's argument is not well taken.

#### 1.    State agency physicians

State agency physicians are experts in Social Security disability programs. SSR 96-6p. "An ALJ may not ignore these opinions and must explain the weight given to them." *Neal v. Comm'r of Soc. Sec.*, 57 F. App'x 976, 979 (3d Cir. 2003). An ALJ may rely on a state agency physician's findings and conclusions even where there is a lapse of time between the state agency report and the ALJ's decision and where additional medical evidence is later submitted. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2012) ("The Social Security regulations impose no limit on how much time may pass between a report and the ALJ's decision in reliance on it. Only where 'additional medical evidence is received that *in the opinion of the [ALJ]* . . . may change the State agency medical . . . consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing,' is an update to the report required.") (emphasis in original) (citations omitted); *Wilson v. Astrue*, 331 F. App'x 917, 919 (3d Cir. 2009) ("Generally, an ALJ is required to consider the reports of State agency medical consultants; however, there is no requirement that an ALJ must always receive an updated report from the State medical experts whenever new medical evidence is available.").

9

Here, Dr. Michael D'Adamo conducted an initial review of Plaintiff's medical record on March 11, 2014. R. 103–13. Dr. D'Adamo specifically considered the medical evidence as it appeared in the record at that time, which included progress notes from Catholic Charities Behavioral Health through October 9, 2013, which revealed "partial appreciable improvement"; a consultative examiner's report dated February 25, 2014, authored by Annamarie Resnikoff, Ph.D., in which Dr. D'Adamo reported "low avg intelligence, understanding concepts average, poor organization and retrieval skills, poor attention and concentration skills, no difficulty formulating practical judgement decisions"; a note from treating neurologist Haodong Song, M.D., that Plaintiff's symptoms associated with her headaches accompanied by nausea, photophobia, and phonophobia were better controlled with amitriptyline. R. 107. Dr. D'Adamo found that this record documented the medically determinable impairments of anxiety disorders and ADD/ADHD but that the disorders neither met nor equaled Listing 12.02, which addresses organic mental disorders, or Listing 12.06, which addresses anxiety-related disorders. R. 108. According to Dr. D'Adamo, Plaintiff had moderate restrictions of activities of daily living, moderate difficulties in maintaining social functioning and in maintaining concentration, persistence, or pace, and no repeated episodes of decompensation of extended duration. R. 109. In assessing Plaintiff's limitations in the area of sustained concentration and persistence, Dr. D'Adamo noted, "On screening, she was unable to do serial 7s. Her digit span was low average forwards, but above average in reverse. She has been diagnosed with ADD in the past. She is only suited for job tasks which do not require intensive mental effort." R. 110. Dr. D'Adamo opined that "[d]espite some limitations in stress tolerance and concentration, she possesses the RFC to adapt and be productive in slower paced jobs where she does not have to coordinate

much with others." R. 111. That RFC would permit her to "perform the mental demands of

unskilled work." R. 107.

Brady Dalton, Psy.D., reviewed Plaintiff's medical record upon reconsideration for the

state agency on September 17, 2014. R. 115–25. When considering the record evidence, Dr.

Dalton specifically noted as follows:

> 21-year-old clmt seeking a reconsideration for DI benefits, however, alleges no
> worsening of initial allegations or new psych concerns. Recon mer [medical
> evidence of record] submitted by clmt's atty /rep *reflects recent positive treatment
> gains with medication adherence*. For example, a note dated 7 /7/14 cites *clmt as
> reporting increaesd* [sic] *mood stabilization with oxcarbazepine*. Additionally, a
> note dated 7/8/14 cites *clmt as reporting improved socizlization* [sic] *with
> sertraline*. MSE's [mental status examinations] describe clmt as properly dressed
> with normal speech and thoughts. Although memory varies, *attention and
> concentration are noted to be intact*. There is no evidence of change in global
> functioning. Recon mer from M Humberton indicate recent discharge from case
> management services in relation to meeting treatment objective. Towards this end,
> although recon mer reflects ongoing evidence of depression and anxiety, *positive
> treatment gains are evident with medication adherence*. Furthermore, *mse's are
> within normal limits. Thus, there is no new or material evidence of change in clmt's
> condition since initial adjudication was completed*. As noted initially, clmt's
> history is significant for adhd, depression and anxiety. Severity of same have never
> required psychiatric hospitalization. *Clmt's adaptive functioning and intact mse's
> reflect no more than moderate psychopathology and /or functional impairments*.
> Thus, *mer as a whole reflects no marked impairments which supports the adoption
> of initial findings for simple work*. Given clmt's anxiety and irritability, she's likely
> to work best in settings with limited social or public interactions.

R. 121 (emphasis added). Dr. Dalton found that Plaintiff had the medically determinable

impairments of anxiety disorders, ADD/ADHD, and affective disorders. R. 120. He agreed with

Dr. D'Adamo that Plaintiff did not meet or medically equal Listings 12.02 or 12.06 and that

Plaintiff had moderate restrictions of activities of daily living, moderate difficulties in

maintaining social functioning and in maintaining concentration, persistence, or pace, and no

repeated episodes of decompensation of extended duration. R.120–21. In assessing Plaintiff's

limitations in the area of sustained concentration and persistence, Dr. Dalton opined that Plaintiff

had "sufficient ability to complete simple instructions, to follow directions without additional assistance, and to maintain adequate attention, concentration, persistence and pace as needed to complete a full work day / work week." R. 123. Dr. Dalton went on to adopt Dr. D'Adamo's "initial findings for simple work in settings with minimal social and public demands." R. 124.

In his decision, the ALJ assigned "great weight" to the opinions of the reviewing state agency physicians, reasoning as follows:

> The undersigned notes the opinions of the State Agency medical consultants. The doctors, although not having the opportunity to personally examine the claimant, are experts in their respective medical fields and familiar with the Agency disability program. Their opinions, based on the medical evidence available at the time of their review, are consistent with the opinions and observations of treating and examining clinicians, and supported by objective medical evidence of record. Hence, the undersigned accords great weight to the opinions and assessments of the State Agency medical consultants in this case (Exhibits B2A and B4).

R. 26. Plaintiff insists that the ALJ erred in assigning great weight to the reviewing state agency physicians because "it is clear that the State Agency consultants were missing the majority of medical exhibits[.]" *Amended Plaintiff's Brief*, ECF No. 34, p. 18; *see also id.* at 29 (complaining that the state agency consultants reached their opinions without "the benefit of reviewing Exhibits 15F-46F"); *Plaintiff's Reply Brief*, ECF No. 38, pp. 5–6. However, as previously noted, an ALJ may rely on a state agency consultant's findings and opinions even when additional medical evidence is later submitted. *Chandler*, 667 F.3d at 361; *Wilson*, 331 F. App'x at 919. Notably, Plaintiff fails to explain how any specific evidence submitted after the state agency consultants had reviewed the record supports her argument in this regard. *See Amended Plaintiff's Brief*, ECF No. 34, pp. 18–20, 29; *Plaintiff's Reply Brief*, ECF No. 38, pp. 5–6; *see also Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination. . . . [T]he party seeking reversal normally must explain why the erroneous ruling caused harm."); *United*

*States v. Claxton*, 766 F.3d 280, 307 (3d Cir. 2014) ("[T]his Court has frequently instructed parties that they bear the responsibility to comb the record and point the Court to the facts that support their arguments.").

Plaintiff goes on to argue that Dr. Dalton's findings of "multiple 'moderate limitations'" direct a finding that Plaintiff is disabled pursuant to POMS DI 24583.005 and that these limitations substantially erode the unskilled sedentary occupational base under SSR 96-9p. *Amended Plaintiff's Brief*, ECF No. 34, pp. 19–20. Plaintiff's arguments are not well taken. As an initial matter, to the extent that Plaintiff invites this Court to reweigh the evidence, the Court declines that invitation. *See Chandler*, 667 F.3d at 359 ("Courts are not permitted to reweigh the evidence or impose their own factual determinations [under the substantial evidence standard]."). In addition, "statements in POMS [Program Operations Manual System] do not have the force of law." *Burke v. Comm'r of Soc. Sec.*, No. CV 19-14148, 2020 WL 2989081, at *3 (D.N.J. June 4, 2020). In any event, even if some of the state agency findings could support Plaintiff's contrary argument, the Court "will uphold the ALJ's decision even if there is contrary evidence that would justify the opposite conclusion, as long as the 'substantial evidence' standard is satisfied." *Johnson v. Comm'r of Soc. Sec.*, 497 F. App'x 199, 201 (3d Cir. 2012) (citing *Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986)).

For all these reasons, the Court concludes that the ALJ's evaluation of the reviewing state agency opinions enjoys substantial support in the record.

### 2. Treating and consulting sources

Plaintiff insists that the ALJ "[n]eglected" the opinions of "all" treating and consulting source opinions, *Amended Plaintiff's Brief*, ECF No. 34, p. 17, and states in a heading in her reply brief that the ALJ improperly "[r]eject[ed]" those opinions, *Plaintiff's Reply Brief*, ECF

No. 38, p. 5. However, these conclusory assertions are unaccompanied by any substantive argument. *See generally id.* For example, Plaintiff did not even specify in her opening brief which treating or consulting providers the ALJ purportedly neglected. *Id.* Additionally, in reply, Plaintiff simply cites to 20 C.F.R. § 416.927(c), arguing generally that her "documented psychiatric evidence was persuasive and that the ALJ "erred in rejecting the findings and opinions of most treating and examining specialists[,]" "including, but not limited to Drs. Stucky, Abdi, Marin, Novotny, Gowda and Ms. Hopper, APN-C[.]" *See id.* Notably, Plaintiff did not identify any specific functional limitation found by any of these sources that the ALJ failed to consider, nor does she explain why the ALJ's consideration of any consulting or treating source opinion was erroneous. *See generally Amended Plaintiff's Brief*, ECF No. 34; *Plaintiff's Reply Brief*, ECF No. 38. The Court will not construct Plaintiff's arguments for her. *See Atkins v. Comm'r Soc. Sec.*, No. 19-2031, 2020 WL 1970531, at *4 (3d Cir. Apr. 24, 2020) "Lacking any direction from [the claimant] as to the specific [evidence] at issue, we will not scour the record to attempt to discern [the claimant's] position."); *see also id.* ("'[J]udges are not like pigs, hunting for truffles buried in the record.'") (quoting *Doeblers' Pa. Hybrids, Inc. v. Doebler*, 442 F.3d 812, 820 n.8 (3d Cir. 2006)) (internal citation omitted)); *Wright v. Comm'r Soc. Sec.*, 783 F. App'x 243, 245 (3d Cir. 2019) ("We need not address this conclusory, undeveloped accusation.") (citations omitted). Accordingly, the ALJ's consideration of any consulting or treating source opinion will not serve as a basis to remand.

### B.      Step Three

Plaintiff argues that the ALJ erred at step three of the sequential evaluation process when he determined that Plaintiff did not meet or medically equal a listed impairment, including Listings 12.02, 12.04, and 12.06. *Amended Plaintiff's Brief*, ECF No. 34, pp. 27–31; *Plaintiff's*

*Reply Brief*, ECF No. 38, p. 6. Plaintiff specifically argues that she meets Listings 12.04 and 12.06. *Id*.

At step three, an ALJ considers whether the combination of a claimant's medically determinable impairments meets or equals the severity of any impairment in the Listing of Impairments. 20 C.F.R. § 416.920(a)(4)(iii). An impairment meets a listed impairment if it satisfies "'*all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify.'" *Jones,* 364 F.3d at 504 (quoting *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)) (emphasis in original). "A claimant cannot qualify for benefits under the 'equivalence' step by showing that the *overall* functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment." *Sullivan*, 493 U.S. at 531 (emphasis added). "[T]he medical criteria defining the listed impairments [are set] at a higher level of severity than the statutory standard" because the "listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing *any* gainful activity, not just 'substantial gainful activity.'" *Id.* at 532 (emphasis in original) (quoting 20 C.F.R. § 416.925(a)). Although an ALJ is not required to use "particular language" when determining whether a claimant meets a listing, the ALJ's discussion must provide for "meaningful review." *Jones*, 364 F.3d at 505 (citing *Burnett*, 220 F.3d at 120). Accordingly, if the ALJ's decision, "read as a whole, illustrates that the ALJ considered the appropriate factors in reaching the conclusion that [the claimant] did not meet the requirements for any listing," "[t]his discussion satisfies *Burnett*'s requirement that there be sufficient explanation to provide meaningful review of the step three determination." *Id.*

Listing 12.04 addresses depressive, bipolar, and related disorders and Listing 12.06 addresses anxiety and obsessive-compulsive disorders. 20 C.F.R. Pt. 404, Subpt. P., App. 1, §§ 12.04, 12.06 (eff. Aug. 22, 2017 to Mar. 13, 2018). To meet Listing 12.04 or 12.06, a claimant must meet the Listing's paragraph A criteria and, in addition, the criteria of either paragraph B or paragraph C. *Id.* The paragraph B criteria are met when a claimant has an extreme limitation of one, or a marked limitation of two,[3] of the following four mental functional areas: the ability to understand, remember, or apply information; the ability to interact with others; the ability to concentrate, persist, or maintain pace; and the ability to adapt or manage oneself. *Id.* The paragraph C criteria are met if the claimant's mental disorder is "serious and persistent[,]" *i.e.*, the claimant has a medically documented history of the existence of the disorder over a period of at least two years and there is evidence of both of the following: (1) medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of the claimant's mental disorder; and (2) marginal adjustment, *i.e.*, the claimant has minimal capacity to adapt to changes in the claimant's environment or to demands that are not already part of his or her daily life. *Id.*

Here, at step two, the ALJ determined that Plaintiff suffered the severe mental impairments of anxiety disorder, affective disorder, ADD/ADHD, and agoraphobia. R. 17. The ALJ determined at step three that Plaintiff's mental impairments, whether considered singly or in combination, did not meet or medically equal the criteria of Listing 12.04 or 12.06. R. 18−20. In

---

[3] A "marked" limitation means that the claimant is seriously limited in her ability to function independently, appropriately, effectively and on a sustained basis in a specified area. *Id.* An "extreme" limitation means that the claimant is unable to function independently, appropriately, effectively on a sustained basis in a specified area. *Id.* A "moderate" limitation means that the claimant has a fair ability to function independently, appropriately, effectively, and on a sustained basis in a specified area. *Id.*

finding that Plaintiff's impairments did not meet the paragraph B criteria, the ALJ concluded that

Plaintiff had moderate limitations in the areas of understanding, remembering, or applying

information; interacting with others; concentrating, persisting, or maintaining pace; and that she

had a marked limitation in the area of adapting or managing oneself:

> In understanding, remembering, or applying information, the claimant has moderate limitations. The claimant alleged that she has difficulty remembering generally, following instructions, completing tasks, paying bills, going to doctor's appointments without reminders, taking medications without reminders, taking public transportation, shopping, and driving. However, the claimant also stated that she could perform simple maintenance, attend doctor's appointments, take medications, read, and play games. In addition, the record shows that the claimant was able to provide information about her health, describe her prior work history, follow instructions from healthcare providers, and respond to questions from medical providers (Exhibits B2F, B5F and B6F; Testimony).

> In interacting with others, the claimant has moderate limitations. Here, the claimant alleged significant inability to leave the home, that she has difficulty engaging in social activities, getting along with others, dealing appropriately with authority, and spending time in crowds. The record refers to multiple incidents where the claimant had difficulty getting along with her peers, teachers and other authority figures. Moreover, the claimant has had a dependent, but very complicated relationship with her mother (Exhibits B6F and B46F). Nonetheless, according to her statements, the claimant is able to spend time with friends and family and live with others. Finally, the medical evidence shows that the claimant had a good rapport with providers, was described as pleasant and cooperative, had good interactions with non-medical staff, and appeared comfortable during appointments (Exhibits B 2F and B 6F; Testimony).

> The next functional area addresses the claimant's ability to concentrate, persist, or maintain pace. For this criterion, the claimant has moderate limitations. The claimant contended that she has limitations in concentrating generally, focusing generally, following instructions, completing tasks, avoiding distractions, working with others without distracting them, and maintaining a regular work schedule. On the other hand, she also reported that she liked to write anime-based fantasy stories, draw and play the X-Box (Exhibit B2F). The claimant also reported that she was able to take care of her personal needs and perform light daily activities (Exhibit B 4E, B6F and B5F; Testimony).

> Finally, the claimant has marked limitations in her ability to adapt or manage herself. At the hearing, and in the Adult Function Reports, the claimant and her mother testified that the claimant is entirely dependent on her mother for day-to-day needs, she has difficulties handling change, managing her own finances,

traveling, remembering her appointments, and had to be reminded to dress, bathe and take her medications. That said, the claimant acknowledged that, although she lacks motivation, she is able to handle self-care and personal hygiene and get along with caregivers. Meanwhile, the objective evidence in the record showed the claimant to have appropriate grooming and hygiene and no problem getting along well with providers and staff. (Exhibits B4E and B5E; Testimony).

R. 18–19. The ALJ went on to find that Plaintiff's impairments also did not meet the paragraph

C criteria, reasoning as follows:

> The undersigned has also considered whether the "paragraph C" criteria are satisfied. In this case, the evidence fails to establish the presence of the "paragraph C" criteria. The record does not establish that the claimant has only marginal adjustment, that is, a minimal capacity to adapt to changes in the claimant's environment or to demands that are not already part of the claimant's daily life. As noted above, although the claimant and her mother repeatedly testified that the claimant relies entirely on her mother's assistance for most day-to-day activities, the record shows that the claimant, though [she] lacks in motivation or desire to change, nonetheless, has retained the ability to engage in most activities of daily living without assistance. The claimant is able to take care of her personal hygiene, take medications, attend medical appointments, engage in social activities and appropriately interact with others (Exhibits B 46F and B2F).
>
> Finally, the undersigned notes that no State agency psychological consultant concluded that a mental listing is medically equaled. The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment. The following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental functional analysis.

R. 19–20. The Court finds no error in the ALJ's reasoning in this regard and finds that

substantial evidence supports the ALJ's determination at step three as to Listings 12.04 and

12.06.

Plaintiff challenges the ALJ's step three findings, arguing first that she meets or

medically equals Listing 12.04 because she "has been diagnosed with depressive disorder with

depressed mood, diminished interest in all activities, sleep disturbance, decreased energy, and

feelings of guilt or worthlessness, difficulty in concentrating or thinking, and suicidal thoughts." *Amended Plaintiff's Brief*, ECF No. 34, pp. 29–30 (citing R. 989–1128). However, it is well-established that a diagnosis alone does not establish the degree of impairment flowing from that diagnosis. *Foley v. Comm'r of Soc. Sec.*, 349 F. App'x 805, 808 (3d Cir. 2009) ("A diagnosis alone, however, does not demonstrate disability.") (citing *Petition of Sullivan*, 904 F.2d 826, 845 (3d Cir. 1990)); *see also Phillips v. Barnhart*, 91 F. App'x 775, 780 (3d Cir. 2004) ("[The claimant's] argument incorrectly focuses on the diagnosis of an impairment rather than the functional limitations that result from that impairment. A diagnosis of impairment, by itself, does not establish entitlement to benefits under the Act"). Plaintiff goes on to argue that she meets or medically equals Listing 12.04 because she "has at least 3 marked limitations in the 'B criteria'" and because the ALJ "improperly concluded that the Plaintiff did not meet the 'C' criteria" where the evidence and testimony establish that she meets criterion C2 with minimal capacity to adapt to changes in the environment or demands that were not already part of her life. *Amended Plaintiff's Brief*, ECF No. 34, p. 30. Plaintiff offers no citation to the record to support these conclusory assertions. *See id*. As previously discussed, Plaintiff bears the burden at step three, *Burnett*, 220 F.3d at 120 n.2, and, therefore, Plaintiff's undeveloped and unsupported arguments do not establish reversible error as it relates to the ALJ's step three finding regarding Listing 12.04. *See Shinseki*, 556 U.S. at 409–10; *Atkins*, 810 F. App'x at 129; *Claxton*, 766 F.3d at 307.

Plaintiff goes on to assert that the "[t]he evidence clearly documents" that she meets Listing 12.06, citing to testimony and medical evidence that she believes supports her argument. *Amended Plaintiff's Brief*, ECF No. 34, pp. 30–31. However, as noted earlier, the Court "will uphold the ALJ's decision even if there is contrary evidence that would justify the opposite

conclusion, as long as the 'substantial evidence' standard is satisfied." *Johnson*, 497 F. App'x at

201.

 For all these reasons, Plaintiff has not shown that she is entitled to remand based on a

purported error in the ALJ's analysis at step three.

 **C.** **Subjective Complaints**

 Plaintiff also contends that the ALJ erred in "ignoring" or improperly evaluating her

subjective complaints. *Amended Plaintiff's Brief*, ECF No. 34, pp. 31−34; *Plaintiff's Reply Brief*,

ECF No. 38, pp. 6−8. "Subjective allegations of pain or other symptoms cannot alone establish a

disability." *Miller v. Comm'r of Soc. Sec.*, 719 F. App'x 130, 134 (3d Cir. 2017) (citing 20

C.F.R. § 416.929(a)). Instead, objective medical evidence must corroborate a claimant's

subjective complaints. *Prokopick v. Comm'r of Soc. Sec.*, 272 F. App'x 196, 199 (3d Cir. 2008)

(citing 20 C.F.R. § 404.1529(a)). Specifically, an ALJ must follow a two-step process in

evaluating a claimant's subjective complaints. SSR 16-3p, 2016 WL 1119029 (March 16, 2016).

First, the ALJ "must consider whether there is an underlying medically determinable physical or

mental impairment(s) that could reasonably be expected to produce an individual's symptoms,

such as pain." *Id.* "Second, once an underlying physical or mental impairment(s) that could

reasonably be expected to produce an individual's symptoms is established, [the ALJ]

evaluate[s] the intensity and persistence of those symptoms to determine the extent to which the

symptoms limit an individual's ability to perform work-related activities[.]" *Id.*; *see also*

*Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999) ("[Evaluation of the intensity and

persistence of the pain or symptom and the extent to which it affects the ability to work]

obviously requires the ALJ to determine the extent to which a claimant is accurately stating the

degree of pain or the extent to which he or she is disabled by it.") (citing 20 C.F.R. §

404.1529(c)). In conducting this evaluation, an ALJ considers objective medical evidence as well as other evidence relevant to a claimant's symptoms. 20 C.F.R. § 416.929(c)(3) (listing the following factors to consider: daily activities; the location, duration, frequency, and intensity of pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate pain or other symptoms; treatment, other than medication, currently received or have received for relief of pain or other symptoms; any measures currently used or have used to relieve pain or other symptoms; and other factors concerning your functional limitations and restrictions due to pain or other symptoms).

Finally, "[t]he ALJ has wide discretion to weigh the claimant's subjective complaints, *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983), and may discount them where they are unsupported by other relevant objective evidence." *Miller*, 719 F. App'x at 134 (citing 20 C.F.R. § 416.929(c)); *see also Izzo v. Comm'r of Soc. Sec.,* 186 F. App'x 280, 286 (3d Cir. 2006) ("[A] reviewing court typically defers to an ALJ's credibility determination so long as there is a sufficient basis for the ALJ's decision to discredit a witness.").[4]

Here, the ALJ followed this two-step evaluation process.  The ALJ concluded that Plaintiff's medically determinable impairments could reasonably be expected to cause symptoms, but that Plaintiff's statements "concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other

---

[4]SSR 16-3p superseded SSR 96-7p on March 26, 2016, and eliminated the use of the term "credibility."  SSR 16-3p.  However, "while SSR 16-3P clarifies that adjudicators should not make statements about an individual's truthfulness, the overarching task of assessing whether an individual's statements are consistent with other record evidence remains the same." *Levyash v. Colvin*, No. CV 16-2189, 2018 WL 1559769, at *8 (D.N.J. Mar. 30, 2018).

evidence in the record for the reasons explained in this decision." R. 22. The ALJ also stated as follows:

> The undersigned notes that, as discussed below, the record reflects ongoing intermittent psychiatric treatment. However, the level of impairment and degree of resulting functional limitations are not supported by the record to the extent alleged by the claimant. The claimant has not had inpatient psychiatric treatment as an adult. Rather the claimant's mother replied that she was advised to place the claimant in inpatient treatment as a minor, but declined to follow the medical advice. Although the claimant and her mother describe the claimant's almost absolute inability to leave her home, both acknowledged there were no attempts to seek a higher level of care such as long-term inpatient treatment or other more structured treatment options. The lack of intensive inpatient or outpatient treatment suggests that the claimant's symptoms are not as limiting so as to motivate her to seek a level of care consistent with the reported symptomatology.

R. 21−22. In discounting Plaintiff's subjective complaints, the ALJ went on to detail years of

medical evidence and record testimony to support his finding, including, *inter alia*, that treating

and examining physicians repeatedly noted that, despite encouragement from her family and

mental health providers, the claimant lacked motivation and "made very little effort to change

her patterns, behaviors or thoughts"; evidence that although the prescribed medications and

psychotherapy treatment stabilized her mood and improved her overall mental state, Plaintiff was

often non-compliant with the treatment regimen, repeatedly missed scheduled therapy sessions,

frequently failed to take prescribed medication, and did not respond to outreach attempts; in June

2013, Catholic Charities terminated their services due to Plaintiff's noncompliance; Plaintiff

reported in November 2015 that that her medications were effective in keeping symptoms in

remission and, therefore, she felt that she no longer needed individual or group therapy to keep

her mood stable; Plaintiff reported in May 2012 that she liked to write anime-based fantasy

stories and play X-Box, that she had no summer plans other than "hanging out" with her

boyfriend, and that she goes to the mall with her boyfriend and she reported no panic attacks or

episodes of agoraphobia; in March 2013, Dr. Song's examination revealed a normal attention

span, intact memory, and unremarkable findings in the mental status and neurological evaluations; records from November 2016 reflect that Plaintiff made very little effort to change her patterns, behaviors, or thoughts; in February 2014, Plaintiff was friendly and cooperative with Dr. Resnikoff, a consultative examiner, with good eye contact and no difficulty remaining seated for the duration of the examination; and while Dr. Resnikoff noted that Plaintiff's attention and concentration were poor, Plaintiff had no issues with memory. R. 22–26. In this Court's view, this record provides substantial support for the ALJ's decision to discount Plaintiff's subjective complaints. *Van Horn*, 717 F.2d at 873; *Miller*, 719 F. App'x at 134; *Izzo*, 186 F. App'x at 286.

Although Plaintiff points to other evidence that she believes the ALJ improperly considered, *see Amended Plaintiff's Brief*, ECF No. 34, pp. 33–34; *Plaintiff's Reply Brief*, ECF No. 38, pp. 7–8, the Court again notes that where, as here, substantial evidence supports the ALJ's decision, the Court must uphold the ALJ's decision even if contrary evidence exists that would justify the opposite conclusion. *Johnson*, 497 F. App'x at 201. For all these reasons, the Court concludes that the ALJ sufficiently explained his reasoning when assessing Plaintiff's subjective complaints, and that the ALJ's findings in this regard are supported by substantial evidence in the record and are therefore entitled to this Court's deference. *See* SSR 16-3p; *Miller*, 719 F. App'x at 134; *cf. Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x. 761, 765 (3d Cir. 2009) ("Credibility determinations as to a claimant's testimony regarding pain and other subjective complaints are for the ALJ to make.") (citing *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983)); *Davis v. Comm'r Soc. Sec.*, 105 F. App'x 319, 322 (3d Cir. 2004) (finding that the ALJ sufficiently evaluated the plaintiff's testimony where "the ALJ devoted two pages to a discussion of claimant's subjective complaints and cited Claimant's daily activities and

objective medical reports"). Accordingly, the ALJ's assessment of Plaintiff's subjective complaints cannot serve as a basis for remand of this action. *Id.*

### D.    RFC

Finally, Plaintiff argues that the ALJ "failed to take into consideration the consistent, well-articulated findings of most treating and consulting sources of functional limitations." *Amended Plaintiff's Brief*, ECF No. 34, p. 34. This Court disagrees.

A claimant's RFC is the most the claimant can do despite her limitations. 20 C.F.R. § 416.945(a)(1). At the administrative hearing stage, the administrative law judge is charged with determining the claimant's RFC. 20 C.F.R. §§ 416.927(e), 416.946(c); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations.") (citations omitted). When determining a claimant's RFC, the ALJ has a duty to consider all the evidence. *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). However, the ALJ need include only "credibly established" limitations. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005); *see also Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d Cir. 2014) (stating that the ALJ has discretion to choose whether to include "a limitation is supported by medical evidence, but is opposed by other evidence in the record" but "[t]his discretion is not unfettered—the ALJ cannot reject evidence of a limitation for an unsupported reason" and stating that "the ALJ also has the discretion to include a limitation that is not supported by any medical evidence if the ALJ finds the impairment otherwise credible").

Here, the ALJ determined that Plaintiff had the RFC to perform a full range of work at all exertional levels but with non-exertional limitations, as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all

24

> exertional levels but with the following non-exertional limitations: the claimant can understand and execute simple, routine tasks, where production is measured no earlier than the end of the workday; frequently respond appropriately to supervisor's instructions, have occasional contact with co-workers and supervisors, but no contact with the public. The claimant can work around others, but not on tasks requiring teamwork or working in tandem, can make simple decisions and adapt to occasional changes in essential work tasks. The claimant will be off-task 10% of the workday due to her impairments.

R. 20. In making this determination, the ALJ detailed years of record evidence, as previously discussed. R. 21–26. After detailing this evidence, the ALJ further explained as follows:

> In sum, the above residual functional capacity assessment is supported by the objective medical evidence of record, particularly the intermittent and rather conservative mental health treatment history, evidence of poor compliance with the prescribed treatment regimen despite evidence of efficacy of treatment, the observations, opinions and assessments of the treating, examining and non-examining specialists, as well as the claimant's own testimony regarding her daily functioning.

R. 26. In the view of this Court, this record contains substantial evidence in support of the ALJ's RFC determination. *See Zirnsak*, 777 F.3d at 615; *Rutherford*, 399 F.3d at 554; *Plummer*, 186 F.3d at 429.

Although Plaintiff contends that the ALJ "failed to take into consideration the consistent, well-articulated findings of most treating and consulting sources of functional limitations" and did not consider "nonexertional limitations secondary to the Plaintiff's limitations of inability to leave the home, perform ADL's or function independently[,]" she, who bears the burden at step four, *see Smith*, 631 F.3d at 634, fails to develop this argument by identifying any such treating or consulting sources and provides no citations to the record for such limitations. *Amended Plaintiff's Brief*, ECF No. 34, p. 34. As noted earlier, the Court will not hunt through the record or develop Plaintiff's conclusory arguments for her. *See Atkins*, 2020 WL 1970531, at *4; *Wright*, 783 F. App'x at 245.

25

Plaintiff goes on to argue that the ALJ gave great weight to the state agency consultants, "yet failed to accept their substantial findings of 'moderate limitations' and how those mental limitations impacted RFC[,]" including "'moderate' difficulties in maintaining attention and concentration for extended periods, performing activities within a schedule, maintain regular attendance, being punctual within customary tolerances; sustaining an ordinary routine without special supervision, working in coordination with or in proximity to others, interacting with the public or accepting criticism from supervisors." *Amended Plaintiff's Brief*, ECF No. 34, p. 34. Plaintiff's argument is not well taken. As an initial matter, despite finding these moderate limitations, Dr. D'Adamo and Dr. Dalton both concluded that Plaintiff was not disabled. R. 103–13, 115–25. More significantly, Plaintiff does not explain why the ALJ's RFC fails to accommodate these moderate limitations. *See Amended Plaintiff's Brief*, ECF No. 34, pp. 34–35. Based on this record, Plaintiff has not persuaded this Court that the ALJ's RFC determination does not account for these moderate limitations. *See Atkins*, 2020 WL 1970531, at *4; *Wright*, 783 F. App'x at 245.

Finally, Plaintiff appears to contend that her mental impairments impose additional limitations not included in the RFC, *i.e.*, being off-task for up to 15% or more of the workday, being absent three to five days per week, being limited to only occasional contact with supervisors and no contact with co-workers or the general public, all of which, Plaintiff argues, preclude work in the national economy. *Amended Plaintiff's Brief*, ECF No. 34, pp. 34–35 (citing R. 87–88 (reflecting the vocational expert's hearing testimony that having these limitations would eliminate all jobs in the national economy). However, the ALJ implicitly rejected these limitations when considering the record evidence, including medical records and medical opinions. R. 21–26. As previously discussed, The ALJ need include only "credibly

established" limitations in the RFC. *See Rutherford*, 399 F.3d at 554. Absent any credible evidence that Plaintiff has such limitations, "'it would be error to include limitations not credibly established by the record when relying on a vocational expert's testimony to make a disability determination.'" *Phelps v. Colvin*, No. CV 15-3146, 2017 WL 2290829, at *14 (D.N.J. May 25, 2017) (quoting *Chiucchi v. Comm'r of Soc. Sec.*, No. 15-2460, 2016 U.S. Dist. LEXIS 173259, at *25 n.4, 2016 WL 7322788 (D.N.J. Dec. 15, 2016)); *cf. Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987) (stating that a "hypothetical question must reflect all of a claimant's impairments that are supported by the record; otherwise the question is deficient and the expert's answer to it cannot be considered substantial evidence") (citation omitted); *Harris v. Comm'r of Soc. Sec.*, No. CV 17-3964, 2018 WL 5801546, at *3 (D.N.J. Nov. 5, 2018) ("While the vocational expert testified in response to a hypothetical posed by Plaintiff's counsel— that a person who is occasionally unable to respond appropriately to supervisors would indeed be unemployable—there is no evidence in the record to support Plaintiff's contention that there are times in the day that she would be wholly unable to interact with supervisors in an appropriate manner, or that Plaintiff would engage in frequent or occasional inappropriate conduct in dealing with them."). Accordingly, because the ALJ did not include these limitations in Plaintiff's RFC, the ALJ properly disregarded the vocational expert's testimony regarding these limitations.

In short, for all these reasons, the Court concludes that the ALJ's findings regarding Plaintiff's RFC are consistent with the record evidence and enjoy substantial support in the record.

## V.    CONCLUSION

For these reasons, the Court **AFFIRMS** the Commissioner's decision.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**

Date:  June 11, 2021                                 *s/Norah McCann King*
                                                     NORAH McCANN KING
                                                     UNITED STATES MAGISTRATE JUDGE